UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WILLIAM HUMPHRIES,<br><br>   Petitioner,<br><br>v.<br><br>STEVEN O'BRIEN,<br><br>   Respondent. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)  04-40142-FDS<br>)<br>)<br>)<br>) |

**ORDER**

**SAYLOR, J.**

Petitioner William Humphries, an inmate at North Central Correctional Institution ("NCCI") in Gardner, Massachusetts, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 13, 2004. Humphries was sentenced on February 13, 2002, to a state prison term for various offenses relating to distribution of cocaine. He appealed to the Massachusetts Appeals Court, which affirmed the conviction. *Commonwealth v. Humphries*, 60 Mass. App. Ct. 1111 (2004). He then applied to the Supreme Judicial Court for leave to obtain further appellate review, which was denied. 441 Mass. 1104 (2004). Humphries now seeks federal habeas corpus relief. The grounds asserted for federal relief are literally identical to those asserted in the state proceeding; the petition simply states, "see attached Application for Further Appellate Review [to the SJC] incorporated by reference for the purpose of this petition."

On August 18, 2004, respondent Steven O'Brien filed an answer to the habeas petition along with a motion for a scheduling order. On August 24, 2004, the Court issued a scheduling order requiring Humphries to file a memorandum of law in support of his petition by October 15,

2004. To date, Humphries has not filed any memorandum of law.

On September 1, 2004, the Court received a letter from Humphries. Although Humphries' name was typed at the end of the letter, it is clear from the letter's substance that it was written by another, unnamed, inmate. The letter states that Humphries' habeas petition was filed with the assistance of other inmates; that Humphries suffers from "a debilitating mental illness"; and that Humphries "cannot adequately defend himself with [sic] the proceedings that will follow the filing of his petition." The Court will construe the September 1, 2004, letter as a motion to appoint counsel.

**I.      Appointment of Counsel**

The Court may appoint legal counsel to financially eligible persons seeking relief under § 2254 whenever the Court determines that the "interests of justice so require." 18 U.S.C. § 3006A(a)(2). The standard which the Court should employ in determining whether counsel should be appointed is not set forth in the statute. In *United States v. Mala*, 7 F.3d 1058, 1063-64 (1993), the First Circuit appointed counsel pursuant to § 3006A after the appellant demonstrated (1) a fair likelihood of success on the constitutional claim, (2) a factually complex and legally intricate claim, and (3) that the facts underlying his claim were largely undeveloped and he was severely hampered, due to his incarceration and indigence, in his ability to investigate them. The court noted the above factors "coalesce[d]" to produce "the rare section 2255 case in which the appointment of counsel [was] warranted." *Id.*

Even though the petitioner in the *Mala* case was a federal prisoner seeking relief under § 2255, the *Mala* factors are applicable to Humphries' request pursuant to § 2254. First, none of the factors in *Mala* are specific to § 2255 cases. Second, § 3006A does not create a different

2

standard for appointment of counsel depending on which statute the habeas petition invokes. Third, case law from other circuits demonstrates the use of nearly identical factors in evaluating motions for appointment of counsel in § 2254 cases. *See, e.g., Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994) (to determine whether appointment of counsel is warranted in a § 2254 case "a district court should consider the factual and legal complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors"). Accordingly, the Court will consider the three factors outlined in *Mala* to determine whether counsel should be appointed for petitioner here.

### A.      Likelihood of Success on Constitutional or Legal Claims

The first factor to be considered is whether the petitioner has established a fair likelihood of success on his constitutional or legal claims. As grounds for habeas review, Humphries simply directed the Court to his Application for Leave to Obtain Further Appellate Review to the Massachusetts Supreme Judicial Court, which he incorporated by reference into his habeas petition. In that application, Humphries stated three grounds for relief: (1) whether the judge's charge to the jury on reasonable doubt impermissibly lowered the Commonwealth's burden of proof; (2) whether the judge's charge to the jury on circumstantial evidence impermissibly lowered the Commonwealth's burden of proof; and (3) whether the judge's refusal to give a missing witness instruction was prejudicial to the defendant.

Before the Court can evaluate the likelihood of success on the merits of the constitutional and legal claims, it must evaluate whether the claims were properly presented to and exhausted in the state courts.

### 1. Whether Humphries Failed to Exhaust State Remedies

Section 2254(b)(1)(A) provides that an application for a writ of habeas corpus shall not be granted unless it appears that "the applicant has exhausted the remedies available in the courts of the state." Humphries must have presented his federal constitutional claims to the state courts prior to raising them in a federal habeas petition to satisfy the exhaustion requirement.

In his first ground for relief, Humphries claims that the judge's improper jury instruction impermissibly lowered the Commonwealth's burden of proof in violation of his due process rights under the Fourteenth Amendment of the U.S. Constitution and under Article 12 of the Massachusetts Declaration of Rights. In order to meet the exhaustion requirement, the federal question must be "plainly defined." *See Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1987). Humphries's sole mention of federal authorities appears in the caption of his argument. Although courts have warned counsel that "cursory references" to due process and the Fourteenth Amendment raise doubts about whether the issue was fairly presented, *see, e.g., Dyer v. Ponte*, 749 F.2d 84, 86-87 (1st Cir. 1984), it is minimally sufficient to demonstrate presentation of the constitutional issue to the state courts. *See Nadworny v. Fair*, 872 F.2d 1093 (1st Cir. 1989).[1] Because Humphries has met the minimum requirements for presenting his federal claim, the first claim is properly before the Court.

In contrast, Humphries's two remaining claims did not explicitly state a federal claim. The First Circuit has provided substantial guidance to the District Court in determining whether a federal issue was properly presented to the state courts. *See Nadworny*, 872 F.2d at 1097.

---

[1] Although the state courts did not address the federal constitutional issue, Humphries need only fairly present his federal claim to the state courts to exhaust his state remedies. *See Fortini v. Murphy*, 257 F.3d 39, 45 (1st Cir. 2001).

Among other things, a court may find that, even though the petitioner did not specifically state a federal constitutional provision or cite a federal constitutional precedent, the federal issue was nonetheless properly presented. *Id.* at 1098-99.  Examples of such instances include citation to a state court decision interpreting federal constitutional law case law or making a state claim that is indistinguishable from a federal claim. *Id.*  "Above all else, the exhaustion requirement is to be applied with a view to substance rather than form: the claim need not be argued in detail nor separately presented, but its federal quality – demarcated by one of our suggested guidelines or so substantively federal that the prototypical (reasonable) jurist would understand that a federal claim had been presented – must be readily apparent." *Id.* at 1101.

After evaluating Humphries's second and third claims using these guidelines, there is no indication of any kind that the state courts were alerted to the presence of a federal question. Humphries's brief only cited state court decisions, none of which discuss federal constitutional Neither the second claim nor the third claim raise an issue that is indistinguishable from a federal claim.  Indeed, there is nothing whatsoever in the presentation of those two claims in the state courts that would have been likely to alert the court to the possible presence of a federal claim.

Failure to exhaust all claims in a habeas petition generally results in either dismissal of the entire petition, *see Rose v. Lundy*, 455 U.S. 509 (1982), or a stay of the petition pending exhaustion, if dismissal would imperil the timeliness of future petitions. *See Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004).  Section 2254(b)(2) provides an alternate remedy for mixed habeas petitions, or those with exhausted and unexhausted claims.  Under section 2254(b)(2), a court may deny any claim on the merits, notwithstanding the applicant's failure to exhaust his state remedies.  Therefore, before dismissing or staying the mixed petition, the merits

of his claims must be examined.

### 2. Whether the Second and Third Claims Should Be Denied on the Merits

Humphries's second claim asserts that the judge impermissibly instructed the jury on circumstantial evidence. Even the most generous reading of this short and unsupported claim fails to yield any possible federal constitutional right which could have been violated from this instruction. Accordingly, his second ground for relief fails on the merits.

Humphries's third claim asserts that the judge's failure to give a missing witness instruction after the Commonwealth decided not to call Detective Joselito Lozado was prejudicial. According to Humphries, Detective Lozado was conducting surveillance in a location which enabled him to see the entrance to the building Humphries allegedly entered. Humphries asserts that Detective Lozado might have been able to confirm that Humphries did not re-enter the building after the drug sale and, therefore, could not have left the "buy" money in the building. When Humphries was arrested, he did not have the "buy" money on him.

Humphries was convicted of unlawful distribution of cocaine, Mass. Gen. Laws ch. 94C, § 32A(c), unlawful possession of cocaine with intent to distribute, Mass. Gen. Laws ch. 94C, § 32A(c), and distribution of cocaine in a school zone. Mass Gen. Laws ch. 94C, § 32J. In a subsequent trial, Humphries was found guilty as a second offender on the possession and distribution charges. Mass. Gen. Laws. ch. 94C, § 32A(d). In order to make its case for distribution of cocaine, the Commonwealth only needed to prove that Humphries transferred the cocaine to another person. None of these statutes require evidence of a monetary transaction to prove distribution. Accordingly, Detective Lozado's testimony, which could have potentially

shed light on what happened to the "buy" money, was not relevant to the distribution charges against Humphries. Additionally, Humphries was free to call Detective Lozado as his own witness but chose not to do so. Accordingly, Humphries' third ground for relief also fails on the merits.

### 3. Whether the First Claim Should Be Denied on the Merits

The sole remaining claim is the first ground for relief, the claim that the burden of proof instruction was prejudicial. Although courts have found that errors in explaining the burden of proof concept to jurors can rise to the level of constitutional error, even imperfect formulations typically survive constitutional challenge. *See Lanigan v. Maloney*, 853 F.2d 40, 45 (1st Cir. 1988) (citing cases with problematic jury instructions that survived a constitutional challenge). Furthermore, if the reasonable doubt instruction conforms to the standards of *Commonwealth v. Webster*, 59 Mass. (5 Cush.) 295, 320 (1850), such an instruction would survive constitutional challenges. *See Lanigan*, 853 F.2d at 43 (noting, with respect to the *Webster* charge, that "it is hard to imagine, without recourse to prolixity, a charge more reflective of the solemn and rigorous standard intended").

Humphries specifically takes issue with the use of the phrases "moral certainty" and "imaginary doubt" in the jury instruction on the burden of proof. The First Circuit has expressly upheld the *Webster* jury instruction, which uses the phrases "moral certainty" and "imaginary doubt" to explain the burden of proof and found the instruction to be constitutional. *Id.* The use of the phrases "moral certainty" and "imaginary doubt" in the instruction on burden of proof at Humphries's trial was nearly identical to the typical *Webster* charge. *Id.* Additionally, the exact phrasing, though slightly different than that set forth in *Webster,* has been found by the

Massachusetts courts, to be a sufficient formulation of the *Webster* charge to survive scrutiny. *See, e.g., Commonwealth v. Silanskas*, 433 Mass. 678, 704 (2001); *Commonwealth v. Andrews*, 427 Mass. 434, 444 (1998).

Accordingly, given that the jury instruction explaining "moral certainty" and "imaginary doubt" was nearly identical to the standard *Webster* charge, Humphries's claim that the instruction impermissibly lowered the burden of proof is without merit. It also follows that Humphries has not demonstrated any likelihood of success on any of his claims, and that therefore he has failed to satisfy the first of the *Mala* factors under consideration by the Court in connection with his request for appointment of counsel.

### B. Factual and Legal Complexity of the Claims

The second factor under *Mala* is whether the claim is factually complex or legally intricate. Humphries was found guilty of unlawful distribution of cocaine, Mass. Gen. Laws ch. 94C, § 32A(c), unlawful distribution of cocaine with intent to distribute, Mass. Gen. Laws ch. 94C, § 32A(c), and distribution of cocaine in a school zone, Mass Gen. Laws. ch. 94C, § 32J after a two day jury trial. A review of the transcript of the evidence provided by the respondent reveals a relatively straightforward case without significant factual or legal complexity.

The habeas petition is similarly straightforward. Humphries has not raised any issues, such as ineffective assistance of counsel, whose factual predicate falls outside the four corners of the trial transcript. The legal basis of Humphries's claims center around the instructions given to the jury. The claims do not present novel or complicated issues of law and can be easily analyzed under existing precedents. Therefore, the habeas petition fails to demonstrate the type of factual and legal complexity which would warrant appointment of counsel under *Mala*.

## C.     <u>Development of Facts and Hindrances Faced by Petitioner</u>

The final factor under Mala is whether the facts underlying petitioner's claim were largely undeveloped and he was severely hampered in his ability to investigate them. The transcript of the evidence demonstrates that the facts relevant to Humphries's petition are developed and there is no indication that additional, undiscovered facts would have changed the outcome. Humphries has also not raised any claims whose factual basis lies outside of the evidence produced at trial. Additionally, Humphries was represented by counsel below, at trial and on appeal, and there is no reason to believe that counsel was ineffective, failed to investigate his claims, or failed to bring the issues he desired to the attention of the state courts.[2] Given that he was adequately represented by counsel and makes no claims outside of the evidence presented at trial, this is not an instance where additional facts must be uncovered to establish the merits of the claim.

The fact that Humphries is alleged to be suffering from a debilitating mental illness and is, therefore, unable to prosecute his claim effectively does, of course, give the Court pause. For present purposes, the Court will assume that the allegation is truthful, and that Humphries does in fact suffer from a serious mental illness.

Humphries's petition states no colorable claim for relief. It is a literal rehash of his state appellate arguments, and requires no factual development and little legal analysis. However, there is an obviously circular quality to the issue: while petitioner's claims appear to be without merit, he contends that he cannot properly assert those claims because of his mental illness, which is why

---

[2] In fact, the opposite is true. Humphries' application for further appellate review to the Massachusetts Supreme Judicial Court contains a footnote in which his counsel explains that she included arguments at Humphries' insistence but disassociated herself from them under *Commonwealth v. Moffett*, 383 Mass 201, 208 (1981).

9

they appear to be without merit. At first blush, it seems that the appropriate response is to appoint counsel to appear and assert whatever claims he may have on his behalf.

The problem, however, is that there is no stopping point to that analysis: in any habeas case in which a prisoner appeared to suffer from mental illness, counsel would necessarily have to be appointed to ensure that all potential claims had been asserted. The Court is not willing to go so far. In cases such as the present one, where there is not even a hint or a suggestion of a colorable claim, the Court will not assume the presence of an unknown constitutional violation and appoint counsel to ferret it out.

Accordingly, and for the foregoing reasons, Humphries's request for appointment of counsel is DENIED.

## II.     Dismissal on the Merits

In light of the foregoing analysis, the Court has concluded that no evidentiary hearing is required and the petition should be dismissed on the merits for failure to state a claim upon which relief can be granted. Accordingly, pursuant to 28 U.S.C. § 2254(b)(2) and Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the petition is hereby DISMISSED. Respondent's Motion for a Scheduling Order, filed August 16, 2004, is denied as moot.

**So Ordered.**

     /s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: December 14, 2004